IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THU TRAN | § | |
| | § | |
| VS. | § | CA No. _____ |
| | § | |
| HARTFORD LIFE AND ACCIDENT | § | |
| INSURANCE COMPANY and GROUP | § | |
| LONG TERM DISABILITY PLAN FOR | § | |
| EMPLOYEES OF ENBRIDGE | § | |
| EMPLOYEE SERVICES, INC. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

THU TRAN, Plaintiff, files this Original Complaint asserting causes of action in law and equity for relief against Hartford Life and Accident Insurance Company and Group Long Term Disability Plan for Employees of Enbridge Services, Inc., Defendants.

## I.
## PARTIES

1.    Plaintiff, Thu Tran is a resident citizen of Houston, Texas.

2.    Defendant, Hartford Life and Accident Insurance Company, ("Hartford"), is a domestic or foreign insurance company licensed to do business and doing business in the state of Texas, and can be served with process by serving its registered agent, CT Corporation, 1999 Bryan St., Suite 900, Dallas, TX 75201, or wherever it may be found.

3.    Defendant, Group Long Term Disability Plan for Employees of Enbridge Services, Inc. ("Plan"), is a domestic or foreign company licensed to do business and doing business in the state of Texas, and can be served with process by serving its

1

registered agent, Enbridge Employee Services, Inc., 1100 Louisiana St., Suite 3300, Houston, TX 77002, or wherever it may be found.

## II.
## JURISDICTION AND VENUE

4.  This action against Hartford and the Plan arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.* This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

5.  Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Defendants maintain business activity in and are in this district.

6.  Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration, at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

## III.
## STATEMENT OF FACTS

7.  Mrs. Tran was hired by Enbridge Employee Service, Inc. ("Enbridge") in January 2015 as a Senior Projects Control Advisor. She was part of a project execution team that handled major projects from $100 million to $700 million. The projects would take 2-5 years to complete. The job was demanding, as it required total focus, attention to details, strong analytical skills, and interaction with various disciplines and management levels. It also required expertise in developing project budgets, tracking project spending, forecasting completion

costs and update completion status, and working diligently with other members to make sure projects completion were within customer expectations. Mrs. Tran had to learn to effectively manage, multitask, and maintain a dedicated level of concentration to all of her work. Accuracy was critical; forgetting to do something was not an option.

8.    Mrs. Tran enrolled in Enbridge's employee welfare benefit Plan that included benefits for long term disability (LTD). The Plan was part of Enbridge's Group Insurance Policy issued by Hartford. It provided income protection if an employee was disabled as a result of injury or sickness. Mrs. Tran was an eligible employee.

9.    Enbridge was the Plan Sponsor and Plan Administrator.

10.   Hartford was the Insurer and Claims Administrator of the Plan.

11.   In October 2012, Mrs. Tran was diagnosed with stage 2 HER2-positive breast cancer[1] on her left side. She completed all procedures, including chemotherapy, mastectomy and radiation. Between May 2013 and January 2015, this involved three surgeries.

12.   In February 2014, Mrs. Tran's oncologist told her that there were no signs of cancer. In December 2014, the same cancer returned and expanded to lymph nodes on the right side. Nine rounds of heavy chemotherapy and a partial

---

[1] HER2-positive breast cancer is a breast cancer has a protein called human epidermal growth factor receptor 2 (HER2), which promotes the growth of cancer cells. HER2-positive breast cancers are more aggressive than other types of breast cancer. https://www.mayoclinic.org/breast-cancer/expert-answers/faq-20058066

3

mastectomy in August 2015 followed. Mrs. Tran then underwent a targeted therapy that included Trastuzumab (Herceptin) and Pertuzumab (Perjeta).

13.   However, an October 2015 PET scan detected cancer returning to the original location. Dr. Sadia Saleem, Mrs. Tran's oncologist, and other doctors in the breast cancer department at MD Anderson recommended a new targeted therapy known as Ado-trastuzumab emtansine (Kadcyla, also known as TDM-1). This is a monoclonal antibody attached to a chemotherapy drug. It is often given for advanced breast cancer treatment for as long as it is helpful.

14.   Mrs. Tran stopped working in January 2015 and applied for LTD benefits. Hartford approved the claim in July 2015. The same month, the Social Security Administration approved Mrs. Tran's Social Security Disability claim retroactive to January 2015.

15.   In November 2016, Dr. Saleem advised Hartford that Mrs. Tran could not return to work due to stage 4 breast cancer. She had to undergo chemotherapy every three weeks for the rest of her life.

16.   In May 2017, Hartford advised Mrs. Tran that she qualified for disability under the "any occupation" definition of the Policy. LTD benefits would continue after July 15, 2017 and terminate on October 3, 2020, when she turned 66 years old.

17.   On February 19, 2018, Hartford employee Nicole Lee reviewed Mrs. Tran's claim. She disagreed with a previous conclusion that Mrs. Tran could do full time sedentary work, because pain and fatigue prevented her from performing activities. She also noted Mrs. Tran's side effects from her medications. Ms. Lee

concluded that the claim should be reviewed on an annual basis because "improvement is not expected".

18.      Four days later, Hartford reassigned the claim away from Nicole Lee.

19.      Two days before the claim was reassigned, Hartford paid MES Solutions to have Dr. Lee Hartner review some medical records. Dr. Hartner concluded that Mrs. Tran had absolutely no physical impairments. In his opinion, Mrs. Tran could work 8 hours a day and 40 hours a week without any restrictions or limitations. He also believed that Mrs. Tran's chemotherapy did not cause any side effects that would prevent her from full time work. Hartford employee Kisha Reyes performed an Employability Analysis and determined that Mrs. Tran could return to full time work in her own occupation as a Project Director.

20.      Hartford terminated Mrs. Tran's claim on April 3, 2018. In doing so, it relied on Dr. Hartner's medical record review.

21.      Dr. Hartner is not licensed to practice medicine in Texas. He was once licensed to practice medicine in Pennsylvania, but that license expired in December 2018. It is unclear if he remains licensed to practice medicine at all. However, he has worked for disability insurance companies for at least nine years.

22.      Former patients have complained on Vitals.com that Dr. Hartner "writes opinions for insurance companies when he has not seen the patient for the purpose of denying disability coverage".

23.      This bias has manifested in Mrs. Tran's claim, as Dr. Hartner concluded that chemotherapy "would not preclude full time work". Either Dr. Hartner never

spoke with Mrs. Tran's treating physicians or he believes that chemotherapy causes no side effects.

24. Hartford does not dispute that Mrs. Tran undergoes chemotherapy every 3 weeks.

25. Dr. Hartner also failed to speak with Dr. Phat Le, Mrs. Tran's treating physician since May 2018. Dr. Le provided Hartford with evidence that Mrs. Tran has near constant fatigue from chemotherapy, pain from old surgical sites, memory problems, and inability to focus: all of these are typical conditions for breast cancer patients. She needs 5-6 rest periods in average day, each lasting 45 minutes to an hour. She must sit with her legs elevated between 4 to 10 hours per day. She has serious limitations in a vast variety of tasks, functions, and abilities that are necessary in any occupation in the national economy. As a result, Dr. Le concluded that Mrs. Tran cannot work an 8 hour day, 40 hours per week.

26. Mrs. Tran appealed Hartford's termination of her LTD claim in September 2018. Along with her appeal, she provided 17 exhibits that supported her claim.

27. In late October 2018, Hartford assigned a Xiao Su to review some of Mrs. Tran's medical records. Dr. Su concluded that Mrs. Tran could not have any functional limitations because she had an ECOG score of 0[2]. He concluded that she could work full time in her own occupation.

---

[2] An ECOG score is used to assess how a patient's disease is progressing, how it affects the daily living abilities of the patient, and determine appropriate treatment and prognosis. https://radiopaedia.org/articles/ecog-performance-status

28.  Based at least in part on Dr. Su's medical record review, Hartford denied Mrs. Tran's appeal on November 1, 2018. Like Dr. Lee Hartner, Dr. Su is not licensed to practice medicine in Texas.

29.  Hartford's use of Dr. Hartner and Dr. Su, among others, reveals its underlying motive to terminate Mrs. Tran's claim, no matter the evidence. On information and belief, Hartford selected these medical record reviewers or directed its medical record review companies, MES Solutions and Professional Disability Associates ("PDA"), to review Mrs. Tran's claim for that very purpose. Those medical record reviewers have routinely discounted or ignored Mrs. Tran's complaints of pain and fatigue. In doing so, they imply that she is either exaggerating her symptoms or outright lying about them. This pattern of conduct evidences a biased approach to Hartford's LTD claims, including this one.

30.  On April 15, 2019, Mrs. Tran submitted additional evidence in support of her claim. Among other things, she provided evidence relating to Hartford's use of biased and unqualified medical record reviewers. She also provided more medical evidence that she must undergo chemotherapy every 3 weeks for the rest of her life. The chemotherapy often makes her feel fatigued and out of breath, robbed of much of her vitality, and uncertain if she can drive. Dr. Saleem noted that Mrs. Tran's ECOG score of 0-1 meant that she suffers fatigue after her intravenous chemotherapy treatments. Her doctors continued to document her fatigue and ever dwindling blood platelet count.

31.    The additional evidence was provided pursuant to Fifth Circuit case authority that obligated Hartford to fully and fairly review the information. *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 300 (5th Cir. 1999). *Vega* has been repeatedly upheld by the 5th Circuit, most recently in *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018). She requested that Hartford review those records pursuant to its legal obligation and re-evaluate her claim.

32.    The evidence that Mrs. Tran sent to Hartford on April 15, 2019 was submitted before filing this lawsuit and in a manner that gave Hartford a fair opportunity to consider it. On May 9, 2019, Hartford employee Nancy Hyndman called Mrs. Tran's counsel and confirmed that Hartford had received the additional documents. However, "per ERISA", it refused to review them because all appeals were exhausted. Hartford was provided the additional evidence supporting Mrs. Tran's claim in a manner that gave it a fair opportunity to review and consider it. It simply refused to do so.

33.    Having exhausted her administrative remedies, Thu Tran brings this action to recover the LTD benefits promised in the Plan and Policy.

## IV.
## CLAIMS & CAUSES OF ACTION

34.    The Group Long Term Disability Plan for Employees of Enbridge Services, Inc. Plan is governed by ERISA. 29 U.S.C. §1001, *et. seq.* Enbridge is the plan sponsor and Plan Administrator. Hartford is the insurer and a named fiduciary under the Plan.

8

35.   As Plan fiduciaries, Hartford and the Plan are obligated to handle claims for the benefit of the Plan and Plan beneficiaries, and to deliver the benefits promised in the Plan. They are also obligated as fiduciaries to conduct their investigation of a claim in a fair, objective and evenhanded manner.

36.   Hartford's adjustment of the Tran claim was instead biased and outcome oriented. This was partly reflected by its denial of the Tran claim, even after being presented with evidence of her disability. It was also reflected in Hartford's unreasonable reliance on reviewers who lacked the training, education, and experience to objectively or competently review his claim.

37.   Hartford's interpretation of the Plan was not legally correct. It was also contrary to a plain reading of the Plan language.

38.   Hartford's interpretation of the Plan and Plan language was contrary to that of the average Plan participant and policyholder. It was contrary to the common and ordinary usage of the Plan terms. Alternatively, the Policy language upon which Hartford based its denial decision was ambiguous. The ambiguous nature of those terms require those terms be construed against Hartford and the Plan and in favor of coverage for Tran.

39.   Hartford's denial was made without substantial supporting evidence. Its decision to terminate the Tran claim was instead based upon rank speculation and guesswork. Hartford's denial decision was *de novo* wrong. Alternatively, it was arbitrary and capricious.

40.   At all material times, Hartford acted on behalf of the Plan and in its own capacity as the Insurer and Claims Administrator.

41.  Defendants' termination of the Tran claim breached the terms of the Plan. This breach was in violation of 29 U.S.C. §1132(a)(1)(B), entitling Tran to the LTD policy benefits to which she is entitled, along with pre-judgment interest on the amounts due and unpaid, all for which Mrs. Tran now sues.

## V.
## STANDARD OF REVIEW

42.  The default standard of review for denial of a benefit claim is *de novo.* Where the Plan or Policy confers discretion on the Claims Administrator, an abuse of discretion standard of review may apply.

43.  The Plan or Policy may contain a discretionary clause or language Defendants may contend affords them discretion to determine eligibility for benefits, to interpret the Policy, and determine the facts. Defendants' denial under this standard of review, if any, was an abuse of discretion. It was arbitrary and capricious.

44.  Hartford should be afforded less deference in light of its financial conflict of interest. Hartford's conflict of interest is both structural and actual. Its structural conflict results from its dual role as the adjudicator of Tran's claim and as the potential payor of that claim. of that claim.

45.  Hartford's actual financial conflict is revealed in the policies, practices, and procedures influencing and motivating claim delays and denials for financial gain. Hartford's financial conflict is also revealed in the high return gained from the delay in payment or denial of claims.

46.  It is also revealed in other ways. Hartford contracted with the State of Arizona to insure the state's various life and disability programs. In 2014, the Arizona

Department of Administration requested proposals from contractors for 2015. Hartford defeated a crowded field of competitors to win the contract. In doing so, it proudly advertised its claims handling processes, reserve and underwriting methodologies, vendor contracts, internal audit program, and performance guarantees and metrics. Each of these evidences and exemplifies its financial conflict and motivation to deny claims.

47.   In light of its financial conflict, Hartford should receive little or no discretion in its claims decision.

48.   Alternatively, the standard of review of this claim should be *de novo,* affording Defendants no discretion in its interpretation of the terms of the Policy and Plan or in its factual determinations. Both factual conclusions and legal determinations are reviewed *de novo* by the Court. *Ariana v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018).

49.   The Plan or Policy was delivered in Texas and is subject to the laws of that jurisdiction. Accordingly, Texas law applies under the ERISA savings clause. Texas has banned the use of discretionary clauses in insurance policies issued in this state. TEX. INS. CODE §1701.062; 28 Tex. ADMIN. CODE §3.1202. Accordingly, review of the Tran claim and Hartford's claims handling conduct, both in its interpretation of terms of the Policy and the Plan, and in its determination of the facts, should be *de novo.*

## VI.
## REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

50.   Tran requests, in addition to the amount of benefits withheld, prejudgment interest on any such award. She is entitled to prejudgment interest as additional

compensation, and pursuant to Texas Insurance Code, Sec. 1103.104, or on principles of equity.

51.    The Plan and Policy do not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Sec. 1103.104(c) of the Texas Insurance Code. Tran thus requests an accounting in order to determine the amount earned on the funds that should have rightfully been paid to her, and in accordance with Insurance Code Sec. 1103.104(c).

## VII.
## CLAIM FOR ATTORNEYS FEES & COSTS

52.    Tran seeks an award of her reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. She is entitled to recover those fees, together with her costs of court, pursuant to 29 U.S.C. §1132(g).

## VIII.
## PRAYER

Thu Tran, Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in her favor and against Defendants Hartford Life and Accident Insurance Company and Group Long Term Disability Plan for Employees of Enbridge Services, Inc., and issue judgment against each Defendant as follows:

A.    Pay to Mrs. Tran all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon and as allowed by law and equitable principles;

B.    Pay all reasonable attorney's fees incurred and to be incurred by Mrs. Tran in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter; and

C.      All such other relief, whether at law or in equity, to which Mrs. Tran may show herself justly entitled.

Respectfully submitted,

By:_____/S/ Amar Raval_____
       Amar Raval, TBA #24046682
       S.D. No. 619209
       Berg Plummer Johnson & Raval LLP
       3700 Buffalo Speedway, Suite 1150
       Houston, TX 77098
       (713) 526-0200
       (832) 615-2665 (Fax)
       araval@bergplummer.com

       ATTORNEYS FOR PLAINTIFF